J-A18008-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHRISTINA MCSHANE FRIDAY, A/K/A CHRISTINA C. FRIDAY, TRUSTEE UNDER THE IRREVOCABLE TRUST AGREEMENT BETWEEN FRANK L. MCSHANE AND FRANK L. MCSHANE, II AND CHRISTINA MCSHANE FRIDAY AND MARK W. MCSHANE | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | No. 1818 WDA 2019 |
| KATHLEEN MCSHANE, CHRISTINA MCSHANE, MARY MANN, SUSAN MCSHANE, AND MAUREEN AUGUSTINE | : : : : : : | |
| Appellants | : | |

Appeal from the Order Entered November 13, 2019
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  No. 7532 of 2018

BEFORE:  OLSON, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                **FILED: NOVEMBER 15, 2021**

Appellants, Kathleen McShane, Christina McShane, Mary Mann, Susan McShane, and Maureen Augustine, (collectively, "Appellants"), appeal the November 13, 2019 order that directed a conveyance of real property, which - as discussed more fully *infra* - was the subject of a partition action, to Mark W. McShane ("Mark") with owelty to be paid to the remaining owners in accordance with their respective ownership interest.  We vacate the order and remand the case with instructions in accordance with this memorandum.

The record demonstrates that, in 1947, Frank L. McShane ("Frank I") purchased a 137.735-acre tract of land in Collier Township, Allegheny County, Pennsylvania with a street address of 80 Noblestown Road ("the property"). Initially, the property was utilized by Frank I for, *inter alia*, strip mining purposes. After the property's mineral resources were extracted, Frank I's son, Frank L. McShane, II ("Frank II") started a quarry operation on the property. Currently, Collier Stone Company ("Collier Stone"), a stone resale business, operates on a portion of the property that abuts Noblestown Road.

Prior to his death, Frank I created an *inter vivos* trust ("Trust") for the benefit of his daughter, Doris Anne McShane ("Doris"), who was a member of a religious order. Frank II and Christina McShane Friday ("Friday"),[1] one of Frank I's daughters, were named the trustees of the Trust. Under the terms of the Trust agreement, upon Doris's death, "the then[-]remaining principal [of the Trust was to be] distributed *per stirpes*, to those of [Frank I's] issue who shall then be living."

Upon his death in November 1977, Frank I devised his ownership interest in the property as follows: Frank II received a 10% ownership interest in the property, Mark, another of Frank I's sons, received a 45% ownership interest in the property, and the Trust received a 45% ownership interest in the property. Frank II's ownership interest equated to 13.7735 acres. Mark

_____

[1] Friday is not Christina McShane, one of the Appellants in this case.

and the Trust each acquired an ownership interest in the property equal to 61.98075 acres.

At the time of Doris's death in October 2000, Frank I's then-living issue were: Frank II, Friday, Mark, Geraldine Devane, Patrick J. McShane, Gertrude McShane Robie, and David McShane.[2] Frank II subsequently died in April 2002. Pursuant to Frank II's last will and testament, his five daughters, Appellants herein, inherited their father's 10% ownership interest in the property. Frank II's son, Patrick F. McShane ("Patrick F."), did not inherit a proportionate share of his father's 10% ownership interest in the property. At the time of his father's death, Patrick F. was the majority (92%) owner of Collier Stone along with his sister, Susan McShane (one of the Appellants herein), who had an 8% ownership interest in Collier Stone.

The orphans' court[3] summarized the procedural history as follows:

_____

[2] Under the terms of the Trust agreement, upon Doris's death, the remaining principal of the Trust was to be distributed *per stirpes* to Frank I's then-living issue. "*Per stirpes*" in the context of the case *sub judice* means equal distribution of the Trust's remaining principal to Frank I's then-living issue at the time of Doris's death. **In re Estate of Harrison**, 689 A.2d 939, 943 (Pa. Super. 1997). Here, seven individuals, as identified *supra*, met this criterion. Applying mathematical principals and dividing the Trust's 61.98075-acre ownership interest in the property by seven, we calculate that each of the seven then-living issue was entitled to an individual 8.85439285714-acre ownership interest in the property.

[3] Pertinent to our discussion is a review of the actions taken by both the Civil Division of the Court of Common Pleas of Allegheny County ("trial court") and the Orphans' Court Division of the Court of Common Pleas of Allegheny County

[On September 20,] 2016, [] Friday[4] and Mark [] filed a partition action in the Civil Division of [the Court of Common Pleas of Allegheny County]. The named defendants [were] the five daughters of [Frank II]. [On December 13, 2016, Friday and Mark] moved for judgment on the pleadings [but their motion for judgment on the pleadings was subsequently withdrawn. On March 6, 2017, Friday and Mark filed a motion for an order of partition and a preliminary conference. That same day, the trial court granted] the request to partition the property [pursuant to] Pa.R.C[iv].P. 1557. [The trial court] also directed the parties to conference on a future date to discuss a plan to partition, simplification of the issues, possible reference to a master[,] and any other issue bearing on the topic. The result of that March 22[, 2017] conference was to have a master attempt to resolve this [matter. On] May 4, 2017[, the trial court] appointed a master.

On March 6, 2018, a hearing was held with the master presiding. Following the hearing, both sides submitted findings of fact and conclusions of law. The master issued a report and recommendation on June 26, 2018[.]

On July 5, 2018, [Friday and Mark] took exception to the master's report and recommendation. [They] claim[ed] the master erred in recommending distribution of [a portion of the] property to [the] beneficiaries of [the Trust] when the orphans[' court] division of [the] Court of Common Pleas [of Allegheny County] has exclusive jurisdiction over the administration[ and] distribution[] of trusts under Section 713(3) of the [Pennsylvania] Probate[, Estates,] and Fiduciar[ies] Code and over the settlement of accounts under Section 711(12). A brief in support of their exceptions was docketed on August 14, 2018.

[Appellants] filed a response [on September 21, 2018]. Their global position [was that] the exceptions lack[ed] merit and the master's report and recommendation should be adopted.

On October 18, 2018, [the trial court entertained oral argument from both parties concerning Friday's and Mark's exceptions to the

_____

("orphans' court"). Therefore, we refer to each judicial body by reference to their appropriate division.

[4] In filing the action for partition of the property, Friday was acting in her capacity as the trustee of the Trust.

master's report and recommendation, as well as their] motion to re-open the record after [Appellants responded to certain] discovery requests[.]

Two months later, [the trial court] transferred the entire case to the orphans' court division. [The orphans'] court conducted an initial conference with counsel in February 2019. [The orphans'] court entered an order on November 1[3], 2019[,] that is the focus of this appeal. The order ruled that "the property is not capable of proportionate division under [Pa.R.Civ.P.] 1560(a)[] and shall instead be awarded pursuant to [Pa.R.Civ.P.] 1562[.]" The [orphans'] court also ruled [that] "the value of the property is $1,377,350[.00] and that a private or public sale will not yield a better price." The [orphans'] court then directed the property be conveyed to Mark [] and[,] upon the sale of the "whole property[,]" he shall then pay [owelty to] the remaining ownership interests in the [] property.

Orphans' Court Opinion, 12/29/20, 3-6 (record citations and extraneous capitalization omitted). This appeal followed.[5]

Appellants raise the following issues for our review:

1.   Whether the [orphans'] court committed an error of law [or] abused its discretion when it determined that the property was incapable of being partitioned[?]

2.   Whether the [orphans'] court committed an error of law [or] abused its discretion when it determined that a private sale was not to be conducted as required under [Pa.R.Civ.P.] 1563 [] despite [Friday's and Mark's] requests for a private sale[?]

3.   Whether the [orphans'] court committed an error of law [or] abused its discretion when [it relied] upon documents not in evidence to support its November 13, 2019 order, including a proposed agreement of sale with [a potential buyer] and supplemental records submitted by [Friday and Mark,] (a) which had not been authenticated or admitted into evidence; (b) where Appellants were denied the opportunity

_____

[5] Both Appellants and the orphans' court complied with Pa.R.A.P. 1925.

to conduct an examination of the proposed purchaser; (c) without first conducting a hearing during which evidence should have been entered upon the record and testimony offered regarding said proposed agreement of sale; [or] (d) where the matter was not remanded to the special master for further proceedings in light of the submission of supplemental documents and the reliance upon an agreement of sale not authenticated or admitted into evidence[?]

4. Whether the [orphans'] court committed an error of law [or] abused its discretion when it assigned a value of $1,377,350[.00] to the property when no evidence of record exists which establishes said dollar amount as the true and accurate value of the property[?]

5. Whether the [orphans'] court committed an error of law [or] abused its discretion by failing to set [] parameters for the sale of the property at issue including a minimum sales price or otherwise requiring [the orphans'] court oversight and approval of the proposed terms and sales price for the property[?]

Appellants' Brief at 5-6 (extraneous capitalization omitted).

Preliminarily we consider whether the Part II order, as discussed more fully *infra*, constituted a final appealable order, given the unique procedural posture of the case *sub judice*, thereby, permitting this Court to address Appellants' issues. **See Kapcsos v. Benshoff**, 194 A.3d 139, 141 (Pa. Super. 2018) (*en banc*) (stating that, where neither party challenges this Court's jurisdiction, we may consider this issue *sua sponte*). As discussed *infra*, the Pennsylvania Probate, Estates, and Fiduciaries Code vests an orphans' court with permissive jurisdiction in some instances and exclusive or mandatory jurisdiction in other instances. In the case *sub judice*, as part of the partition action, the trial court issued an order directing partition (the Part I order) and

- 6 -

subsequently transferred the matter to the orphans' court, which then directed conveyance of the property and payment of owelty (the Part II order). We are unaware of any prior Pennsylvania appellate case that decides whether a partition action (or a part thereof) falls within the permissive or mandatory jurisdiction of the orphans' court when one of the entities having an ownership interest in the real property is a trust. The distinction is critical to the case *sub judice*. If the trial court lacked jurisdiction to issue the Part I order, then the trial court's March 6, 2017 Part I order was a legal nullity. If that order were a legal nullity, no determination as to whether the property was partitionable under law occurred, and there was nothing for the orphans' court to convey or distribute under a Part II order. Under these circumstances, any Part II order would be a legal nullity, and this Court could not address the merits of Appellants' claims. **See Kapcsos**, 194 A.3d at 141.

> We begin by discussing proper procedure for a partition action, due to its unique nature and the dearth of appellate precedent in this rarely litigated, often confusing, area of the law. Pennsylvania Rules of Civil Procedure 1551 - 1574 split a partition action into two, distinct, chronological parts. Rules 1551 - 1557 govern Part [I], and Rules 1558 - 1574 govern Part [II]. Each part, by rule, must produce its own, distinct, appealable order.
>
> The first order, under [Rule] 1557, directs partition of the parties' legal interests into severalty. **See Johnson v. Gaul**, [] 77 A. 399, 400 ([Pa.] 1910) ([stating that,] "partition is a possessory action; its purpose and effect being to give to each of a number of joint owners his or her share in severalty").
>
> The second order, under [Rule] 1570, does one of three things. A Rule 1570 order may (1) divide the partitioned property among the parties, (2) force one or more of the parties to sell their interest in the land to one or more of the parties, or (3) sell the

- 7 -

land to the general public and distribute the proceeds among the parties.

In Part [I], the [trial] court must determine whether the property is partitionable under law. In other words, Part [I] is to ascertain:

[1.] Do the parties jointly own the real estate in question?

[2.] If so, what fractional legal interests in the property does each party hold?

The answers to these questions may be admitted in the pleadings, or, if they are not, a hearing or jury trial may be needed. If the trial court answers both questions and finds that the plaintiff has established a right to partition, Rule 1557 dictates:

the [trial] court shall enter an order directing partition which shall set forth the names of all the co-tenants and the nature and extent of their interests in the property. No exceptions may be filed to an order directing partition.

[Pa.R.Civ.P. 1557.] Critically, any party may immediately appeal that order under Pennsylvania Rule of Appellate Procedure 311(a)(7) (permitting some interlocutory appeals as of right). After a Part [I] order of partition becomes final[6] (either because no [party] appeals or an appellate court affirms it), only then may

_____

[6] The use of the word "final" to describe a Part I order that has not been appealed or has been affirmed by an appellate court is somewhat troubling. A final order is defined as, *inter alia*, an order that disposes of all claims and of all parties. Pa.R.A.P. 341(b)(1). Because a Part I order does not dispose of all claims or all parties, the Part I order is more properly identified as an unappealable interlocutory order under Rule 311(a)(7) upon expiration of the 30-day appeal period or as an order that is no longer subject to appellate review under the law of the case doctrine, which embodies the concept that a court involved in the later phase of a litigated matter cannot reopen issues previously decided by a prior court in an earlier phase of the matter, if it has been affirmed on appeal. This Court's use of the word "final" to describe a Part I order that has not been appealed or has been affirmed by an appellate court in *Kapcsos* is of no moment here, however, as neither party disputes (and we have no occasion to review) the entry of the trial court's Part I order. The only issue we consider in the case *sub judice* is whether the trial court possessed subject matter jurisdiction to entertain, and dispose of, the Part I phase of a partition action.

parties proceed to Part [II], where the actual division, award, or sale of the partitioned property occurs.

***Kapcsos***, 194 A.3d at 141-142 (ellipsis and original brackets omitted). "Part [II] is purely an equitable proceeding where the trial [court] balances the equities to decide what form the partitioning will take. If the property were a pie, the trial court must decide how best to serve it to the parties." ***Id.*** at 142-143.

Pennsylvania courts have long-held that,

A court has jurisdiction of subject-matter if it is empowered to enter upon an inquiry for the competent hearing and determination of a controversy of such character. The thing of chief importance on a question of jurisdiction of subject-matter is not whether the plaintiff may recover in the particular forum on the cause of action pleaded but whether the court is empowered to hear and determine a controversy of the character involved.

***Hauger v. Hauger***, 101 A.2d 632, 633 (Pa. 1954) (ellipsis omitted); ***see also Domus, Inc. v. Signature Building Sys. Of Pa, LLC***, 252 A.3d 628, 636 (Pa. 2021) (stating that, "[t]he pertinent consideration is whether the court could enter upon the inquiry, not whether it might ultimately decide that it was unable to grant the relief sought in the particular case") (original quotation marks omitted)). "Subject matter jurisdiction is not synonymous with a tribunal's power to act, although the terms are often used interchangeably by judges and litigants alike." ***Domus***, 252 A.3d at 636 (original quotation marks omitted).

Jurisdiction relates solely to the competency of the particular court or administrative body to determine controversies of the general class to which the case then presented for its consideration

belongs. Power, on the other hand, means the ability of a decision-making body to order or effect a certain result.

*Id.* (citation omitted). "Subject matter jurisdiction is a question that is not waivable[.]" *Id.*

Pennsylvania Rule of Civil Procedure 1552 states that, "[a]n action for the partition of real property, including an action in which the Commonwealth is a party, may be brought in and only in a county in which all or any part of any property which is the subject matter of the action is located." Pa.R.Civ.P. 1552. Courts of common pleas have "unlimited original jurisdiction of all actions and proceedings" "except where exclusive original jurisdiction of an action or proceeding is by statute or general rule[.]" 42 Pa.C.S.A. § 931(a).

Section 711 of the Pennsylvania Probate, Estates, and Fiduciaries Code states that, "jurisdiction of the court of common pleas over[, *inter alia*, *inter vivos* trusts] shall be[7] exercised through its orphans' court division[.]" 20 Pa.C.S.A. § 711(3). Section 711(3) states that the orphans' court shall have mandatory jurisdiction over "[t]he administration and distribution of the real and personal property of *inter vivos* trusts, and the reformation or setting

_____

[7] As indicated by the title of Section 711, the use of the words "shall be" denotes that the exercise of jurisdiction by the orphans' court division is mandatory. **Compare** 20 Pa.C.S.A. § 711 (codifying the mandatory exercise of jurisdiction by the orphans' court) **with** 20 Pa.C.S.A. § 712 (codifying the nonmandatory exercise of jurisdiction by the orphans' court).

aside of any such trusts[.]"[8]  *Id.*  "'*Inter vivos* trust' means an express trust other than a trust created by a will, taking effect during the lifetime or at or after the death of the settlor."  *Id.*

Section 712 of the Probate, Estates, and Fiduciaries Code explains that the jurisdiction of the court of common pleas may be, but is not required to be, exercised through its orphans' court division when the matter pertains to, *inter alia*, a determination of title to real estate and when the controversy involves matters both enumerated and not enumerated in Section 711.  20 Pa.C.S.A. § 712(1) and (3).  In pertinent part, Section 712 states,

### § 712.  Nonmandatory exercise of jurisdiction through orphans' court division

---

[8] In matters of statutory interpretation, an appellate court's standard of review is *de novo* and the scope of review is plenary.  ***Philadelphia Gas Works v. Pennsylvania Pub. Util. Comm'n***, 249 A.3d 963, 970 (Pa. 2021).  When interpreting a statute, an appellate court strives to ascertain the intent of the legislature in enacting the statute.  *Id.*; ***see also*** 1 Pa.C.S.A. § 1921(a) (stating, "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly.  Every statute shall be construed, if possible, to give effect to all its provisions.").

Section 711 does not define the term "administration and distribution."  In interpreting the plain meaning of this term, we note that Black's Law Dictionary defines the term "administration of estates" as "[s]upervision by an executor or administrator."  Black's Law Dictionary 65 (Revised 4th ed. 1968).  The term "administration" is defined as "involve[ing] the collection, management, and distribution of [the] estate[.]"  *Id.*  With these definitions in mind, the term "administration and distribution" as it pertains to the real and personal property of an *inter vivos* trust can be defined, within the context of Section 711, as "the supervision by a trustee over the collection, management, and distribution of a trust's assets."

The jurisdiction of the court of common pleas over the following may be exercised through either its orphans' court division or other appropriate division:

**(1) Title to real estate.**--The determination of the persons to whom the title to real estate of a decedent or of the creator of an estate or trust has passed by devise or descent or by the terms of the trust instrument where jurisdiction of such estate or trust is exercised through the orphans' court division: Provided, That nothing herein shall be construed to restrict the provisions of section 711 (relating to mandatory exercise of jurisdiction through orphans' court division in general) relating to distribution of real estate in an estate or trust.  []  For other actions to quiet title to real estate, this section shall govern.

. . .

**(3) Other matters.**--The disposition of any case where there are substantial questions concerning matters enumerated in section 711 and also matters not enumerated in that section.

*Id.*  Section 712 is of note for two reasons.  First, Section 712(1) **permits, but does not require**, the orphans' court to exercise jurisdiction over a matter that involves a determination of the persons to whom the title to real property of a decedent or of a creator of an estate or trust has passed by virtue of devise or descent or by the terms of the trust agreement.  Second, Section 712(3) provides that the orphans' court division **may, but is not required**, to exercise jurisdiction when a controversy involves matters enumerated in Section 711, such as matters involving the administration of an *inter vivos* trust and distribution of the trust's assets, but also involves matters that are not enumerated in Section 711.

Here, a review of the record demonstrates that, on March 6, 2017, the trial court ordered that the property, which was the subject of Friday's and Mark's partition action, was partitionable. This March 6, 2017 order was the Part I order that terminated the parties' joint tenancy in common in the property and set apart in severalty the interests the parties held in common to the property in accordance with the percentage of ownership devised to each party pursuant to Frank I's last will and testament. In so doing, the trial court examined the title to the property and determined the persons or legal entities having an ownership interest in the property by virtue of the will and *inter vivos* trust created by the decedent, Frank I. Pursuant to Section 712, the trial court and the orphans' court had concurrent jurisdiction over the Part I order even though a partial ownership interest in the property had been devised to and was held by an *inter vivos* trust. **See** 20 Pa.C.S.A. § 712(3) (permitting concurrent jurisdiction when the controversy involves matters enumerated in Section 711, *i.e.*, *inter vivos* trusts, and matters not enumerated in Section 711, *i.e.*, a determination of title). The Part I order was immediately appealable as an interlocutory order;[9] however, no party

---

[9] Pennsylvania Rule of Appellate Procedure 311(a)(7) permits an interlocutory appeal as of right of an order directing partition. Pa.R.A.P. 311(a)(7); **see also Kapcsos**, 194 A.3d at 142 (stating that, any party may immediately appeal a Part I order under Pa.R.A.P. 311(a)(7)).

filed an appeal.  As such, the Part I order became unappealable on April 5, 2017.[10]

Thereafter, the remaining aspects of the partition action were transferred to the orphans' court division because the outcome of the Part II order involved the administration of a trust, *i.e.*, conveyance of the Trust's ownership interest in the property, and the distribution of trust property, *i.e.*, disbursement of the owelty to be received by the Trust in exchange for its ownership interest in the property.  **See** 20 Pa.C.S.A. § 711(3) (requiring jurisdiction to be in the orphans' court of matters involving the administration and distribution of the assets of an *inter vivos* trust).  On November 12, 2019, the orphans' court entered an order, the Part II order, in which the orphans' court found that the property was not divisible into proportionate purparts,

_____

[10] The Part I order became unappealable pursuant to Rule 311(a)(7) upon expiration of the 30-day appeal period.  **See** Pa.R.A.P. 903(a) (stating that, a notice of appeal "shall be filed within 30 days after the entry of the order from which the appeal is taken"); **see also Kapcsos**, 194 A.3d at 142 (stating that, a Part I order becomes unappealable upon expiration of the period in which to file an appeal (or upon affirmation by an appellate court)).  We note that the trial court's order failed to comply with Pa.R.Civ.P. 1557, which requires that the order directing partition "set forth the names of all the co-tenants and the nature and extent of their interests in the property."  **See** Pa.R.Civ.P. 1557.  A review of the Part I order demonstrates that the trial court failed to set forth the names of all co-tenants and the nature and extent of their ownership interest in the property.  The names of all co-tenants, together with the nature and extent of their ownership interests, was readily discernable from the record and no Pennsylvania court has ever held that such a defect impairs the validity of a Part I partition order.  Moreover, no party appealed the Part I order, and the order became unappealable under Pa.R.A.P. 311(a)(7) upon expiration of the 30-day appeal period.  Consequently, all parties waived this issue.

pursuant to Rule 1560(a), and directed that the property, in its entirety, be conveyed to Mark, pursuant to Rule 1562, and upon its sale, the owelty be distributed with 45% of the proceeds owed to the Trust and 10% of the proceeds owed to Appellants.

In this case, the trial court possessed jurisdiction to enter a valid Part I order and did so. As such, the ensuing Part II order entered by the orphans' court resolved all claims as to all parties pertaining to partition of the property and constituted a final, appealable order. Therefore, we may reach the merits of Appellants' claims.

Appellants' five issues challenge the orphans' court's order adjudicating the action for partition of the property. "When reviewing an equitable decree, [including one that adjudicates an action for partition,] our standard of review is limited." *McGoldrick v. Murphy*, 228 A.3d 272, 275 (Pa. Super. 2020).

> We will reverse only where the trial court was palpably erroneous, misapplied the law[,] or committed a manifest abuse of discretion. Where there are any apparently reasonable grounds for the trial court's decision, we must affirm it. Moreover,
>
> > the function of this Court on an appeal from an adjudication in equity is not to substitute our view for that of the [trial court. Rather, o]ur task is [] to determine whether a judicial mind, on due consideration of all the evidence, as a whole, could reasonably have reached the conclusion of that tribunal.
>
> Additionally, we note that when reviewing the results of a non-jury trial, we are bound by the trial court's findings of fact, unless those findings are not based on competent evidence.

- 15 -

*Id.* at 275-276 (original brackets omitted), *citing **Nebesho v. Brown***, 846 A.2d 721, 725-726 (Pa. Super. 2004). Questions concerning the interpretation of our procedural rules raise a question of law for which our standard of review is *de novo*. ***Bernstein v. Sherman***, 902 A.2d 1276, 1278 (Pa. Super. 2006).

The Pennsylvania rules of civil procedure pertinent to the case *sub judice* are as follows:

### Rule 1560. Property Capable of Division without Prejudice

If division can be made without prejudice to or spoiling the whole, the property shall be divided as follows:

(a) into as many purparts as there are parties entitled thereto, the purparts being proportionate in value to the interests of the parties;

(b) if it cannot be divided as provided in Subdivision (a), then into as many purparts as there are parties entitled thereto, without regard to proportionate value;

(c) if it cannot be divided as provided in Subdivisions (a) or (b), then into such number of purparts as shall be most advantageous and convenient without regard to the number of parties.

Pa.R.Civ.P. 1560.

### Rule 1561. Property Capable of Proportionate Division. Award

Property divided under Rule 1560(a) shall be awarded to the parties according to their respective interests.

Pa.R.Civ.P. 1561.

### Rule 1562. Property not Capable of Proportionate Division. Award

Subject to acceptance or refusal and private sale among the parties as hereinafter provided, property not capable of division under Rule 1560(a) but capable of division under Rule 1560(b) or (c), shall be awarded equitably among the parties with appropriate provisions for owelty. Sums payable as owelty shall be secured and paid in such manner and time as the court shall direct.

Pa.R.Civ.P. 1562.

### Rule 1563. Property not Capable of Division without Prejudice. Sale. Objections

(a) Except as otherwise provided in Subdivision (b), property not capable of division without prejudice to or spoiling the whole shall be offered for private sale confined to the parties.

(b) Parties defendant owning a majority in value of the property may object in writing to any sale, requesting that the property be awarded to them at its valuation fixed by the court and that their interests in the same remain undivided. Upon such request the entire property shall be awarded to the parties objecting to sale, as tenants in common, subject to the payment to the parties desiring partition and sale of the amounts of their respective interests based upon the valuation. The amounts due the parties shall be charged as liens upon the property, to be paid in such manner and time as the court shall direct.

Pa.R.Civ.P. 1563.

### Rule 1567. Private Sale Confined to Parties. Conduct. Confirmation

In any private sale confined to the parties, the property, if divided into purparts, shall be offered for sale both in purparts and as a whole to determine which will bring the greater price. No sale of the whole shall be confirmed unless the amount bid equals or exceeds the valuation of the whole fixed by the court. No sale of any purpart shall be confirmed unless the amount bid for such purpart equals or exceeds its valuation as fixed by the court. The award and allocation to the successful bidder shall be made subject to the payment of owelty where required.

Pa.R.Civ.P. 1567.

### Rule 1569.  Master's Report.  Exceptions

(a)  A master who is appointed by the court shall file a report with respect to the matters submitted.  The report shall follow the form of decision in Rule 1570, insofar as the scope of the reference to the master permits.

. . .

(c) Within ten days after notice of the filing of the report exceptions may be filed by any party to rulings on evidence, to findings of fact, to conclusions of law and to the proposed order. The court may, with or without taking testimony, remand the report or enter a decision in accordance with Rule 1570 which may incorporate by reference the findings and conclusions of the master in whole or in part.

Pa.R.Civ.P. 1569 (a) and (c).

### Rule 1570.  Decision and Order

(a)  The decision shall include findings of fact as follows:

(1) whether the property is capable of division, without prejudice to or spoiling the whole, into purparts proportionate in value to the interests of the co-tenants;

(2) the number of purparts into which the property can be most advantageously divided, if partition proportionate in value to the interests of the parties cannot be made;

(3) the value of the entire property and of the purparts;

(4) the mortgages, liens and other encumbrances or charges which affect the whole or any part of the property and the amount due thereon;

(5) the credit which should be allowed or the charge which should be made, in favor of or against any party because of use and occupancy of the property, taxes, rents or other amounts paid, services rendered, liabilities incurred or benefits derived in connection therewith or therefrom;

(6) whether the interests of persons who have not appeared in the action, or of defendants who have elected to retain their shares together shall remain undivided;

(7) whether the parties have accepted or rejected the allocation of the purparts or bid therefor at private sale confined to the parties; and

(8) whether a sale of the property or any purpart not confined to the parties is required and if so, whether a private or public sale will in its opinion yield the better price.

(b) The order shall include:

(1) an appropriate award of the property or purparts to the parties subject to owelty where required;

(2) if owelty is required, the amount of the awards and charges which shall be necessary to preserve the respective interests of the parties, the purparts and parties for or against which the same shall be charged, the time of payment and the manner of securing the payments;

(3) the protection required for life tenants, unborn and unascertained remaindermen, persons whose whereabouts are unknown or other persons in interest with respect to the receipt of any interest; and

(4) a public or private sale of the property or part thereof where required.

Pa.R.Civ.P. 1570.

Appellants' first issue asserts that the orphans' court erred in determining that the property was incapable of being partitioned or, stated another way, proportionately divided. Appellants' Brief at 5, 39-44.

In its November 12, 2019 Part II order, the orphans' court stated, "the property is not capable of proportionate division under Rule 1560(a) and shall instead be awarded pursuant to Rule 1562 with the provisions for owelty for the remaining parties' respective interests." Orphans' Court Order, 11/12/19, at unnumbered page 1. In referencing Rule 1562, which applies when the property **is partitionable** under Rule 1560(b) or (c), the orphans' court

implicitly found that the property was capable of partition. In its Rule 1925(a) opinion, however, the orphans' court stated,

> Knowing the geographical make-up of this property and the number of people who must get relatively equal value for their interest are the primary motivators for the [orphans'] court's conclusion that **this property is not capable of being partitioned.**

Orphans' Court Opinion, 12/29/20, at 10 (extraneous capitalization omitted, emphasis added). In stating that the property was not capable of being partitioned, the orphans' court explained,

> The prime part of this tract of land is that which fronts Noblestown Road. This is why the business operation of Collier Stone Company is there. [Its] operations are on roughly 7-8 acres of the whole [property]. Making that one partition and then dividing up the remaining land consistent with [Collier Stone's] interest would leave some family members with a piece of real estate that is virtually useless.

*Id.*

In interpreting the rules of civil procedure and, in particular, their application to the case *sub judice*, we are guided by Rule 127 which states, in pertinent part, as follows:

> (a) The object of all interpretation and construction of rules is to ascertain and effectuate the intention of [our] Supreme Court.
>
> (b) Every rule shall be construed, if possible, to give effect to all its provisions. When the words of a rule are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

Pa.R.Civ.P. 127 (a) and (b).

Rule 1562 applies when the property is not capable of partition under Rule 1560(a) but is capable of partition under Rule 1560(b) or (c). Pa.R.Civ.P. 1562; *see also* Pa.R.Civ.P. 1560. In the instant case, Rule 1560(b) required partition of the property into multiple purparts since there were multiple parties - the Trust, Mark, and Appellants - who were entitled to a portion of the property. Pa.R.Civ.P. 1560(b). Since the orphans' court did not partition the property into multiple purparts, it appears, as demonstrated by its November 12, 2019 order, that the orphans' court applied Rule 1560(c), which states that the property shall be partitioned "into such number of purparts as shall be most advantageous and convenient without regard to the number of parties." Pa.R.Civ.P. 1560(c). The orphans' court Part II order, however, did not partition the property into purparts but, rather, maintained the integrity of the property as a single unit and directed that the entire property be conveyed to Mark. Partitioning by definition[11] is the act of dividing a unit, such as real property, into two or more smaller units. Therefore, the partitioning of a single unit of property into a single unit of property is the equivalent of finding that the property is not capable of division without prejudice to the whole. As such, the partitioning of the property in the case *sub judice* was governed, instead, by Rule 1563, which applies when a

---

[11] Black's Law Dictionary defines "partition," in pertinent part, as "[the] act of dividing; [especially], the division of real property held jointly or in common **by two or more** persons into individually owned interest." Black's Law Dictionary 1151 (8th Ed. 1999).

property is "not capable of division without prejudice to or spoiling the whole[.]" **See** Orphans' Court Opinion, 12/29/20, at 10.

Although the orphans' court's citation to Rule 1562 was misplaced, we discern no error of law or abuse of discretion in the orphans' court's determination that the property was not capable of division without prejudice to the whole. The subject property was comprised of 137.735 acres, of which only a small portion of the land abutted, and had direct access to, Noblestown Road, a main source of ingress and egress to the property. Moreover, portions of the property had been subjected to strip mining activities, and later stone quarrying activities, and were left in a condition requiring reclamation. The orphans' court concluded, and the record supports, that partitioning of the property would leave certain parties with tracts of land having direct access to Noblestown Road and, thus, providing those parties with valuable property, while other parties would receive tracts of land with limited or no access to Noblestown Road, thereby, leaving those parties with useless or less valuable property that was practically landlocked. As such, the orphans' court did not abuse its discretion or err as a matter of law in determining that the property was not partitionable. Therefore, Appellants' first issue is without merit.

In Appellants' second issue, they contend the orphans' court erred when it failed to order that the property be sold pursuant to a private sale confined to the parties pursuant to Rule 1563. We agree.

The orphans' court in directing that the property be conveyed to Mark stated that, "upon sale of the whole property, [Mark] shall pay owelty" to the

- 22 -

remaining ownership interests. Orphans' Court Order, 11/12/19, at unnumbered page 2. The orphans' court explained that "[t]he master found the Trust does not have the ability to acquire the property through a private sale. The Trust has one asset – [its ownership interest in] the property which is the focal point of the litigation. It does not have the necessary cash to effectuate the private sale contemplated by [Rule 1563.]" Orphans' Court Opinion, 12/29/20, at 10.

Pennsylvania Rule of Civil Procedure 1563 states that, "[e]xcept as otherwise provided in Subdivision (b)[, which does not apply in the case *sub judice*], property not capable of division without prejudice to or spoiling the whole **shall be offered for private sale confined to the parties**." Pa.R.Civ.P. 1563 (emphasis added). Here, the orphans' court did not order the property to be offered for private sale confined to the parties. While the orphans' court explanation regarding the Trust's ability to purchase the property in a private sale may be well-placed, the orphans' court was, nonetheless, required to offer the property in a private sale confined to the parties in the event that **any** party with an ownership interest in the property, *i.e.*, Mark, the Trust, or any one of the five Appellants, wished to purchase the property. Only after the property has been offered in a private sale confined to the parties with no party purchasing the property can the property be offered in a public sale or a private sale not confined to the parties. Pa.R.Civ.P. 1568 (stating, "[i]f a private sale of the property . . . is not confirmed under Rule 1567, the property or purpart shall be sold at public sale or at private

sale not confined to the parties, as the court may direct"). Therefore, we find the orphans' court erred as a matter of law in failing to order that the property be first offered at a private sale confined to the parties, pursuant to Rule 1563.

Appellants third issue challenges the orphans' court's reliance on a 2019 agreement of sale, in which a potential buyer offered to purchase the property for $1,377,350.00, when fixing the value of the property. Appellants' Brief at 5, 47-53. Appellants assert "there was no basis for [the orphans' court] to deem the proposed agreement of sale credible as there was no testimony offered regarding the terms of the proposed agreement, particularly the contingencies." *Id.* at 49 (extraneous capitalization omitted).

Pennsylvania Rule of Civil Procedure 1569(c) provides that before entering its Part II order in a partition action, the court sitting in equity may hear testimony and consider evidence in addition to that offered at the master's hearing. Pa.R.Civ.P. 1569(c) (stating, a court may, with or without taking testimony, enter its decision in accordance with Rule 1570). It is the role and function of the equity court, as fact-finder, to determine the credibility of the evidence, and this Court will not disturb a credibility determination unless it can be shown that "the court's determination was manifestly erroneous, arbitrary and capricious[,] or flagrantly contrary to the evidence." *Gutteridge v. J3 Energy Group, Inc.*, 165 A.3d 908, 914 (Pa. Super. 2017) (*en banc*).

In finding the agreement of sale credible, the orphans' court stated,

> The proposed agreement of sale was brought to the [orphans'] court's attention at the November [12, 2019 status] conference. It contained [the] signatures of [two] owners who [each] had a 45% [ownership] interest in the property. It had the signature of a [potential] buyer. It set forth an agreed upon price. The only hold up was the signature[s] of the 10% interest holders – [Appellants]. The coalescence of these facts informed the [orphans'] court [that] this document was real and represented the [potential] buyer's and, at least, 90% of the seller[s'], intent.

Orphans' Court Opinion, 12/29/20, at 11 (extraneous capitalization omitted).

In challenging the credibility of the agreement of sale at the November 12, 2019 status conference, counsel for Appellants stated,

> We have now another agreement of sale which is a part of the record. [Appellants] have not had an opportunity to explore this. To be quite honest, [this agreement of sale is almost identical to the prior agreement of sale received from a different potential buyer,] which was unacceptable. There are due diligence periods [specified in the agreement of sale] of over two years similar to [the prior agreement of sale].

N.T., 11/12/19, at 8. At the status conference, when counsel for Friday and Mark asked the orphans' court to assign a value to the property of either $685,000.00 or $690,000.00 in accordance with the master's recommendation, counsel for Appellants responded that, "[Friday and Mark] have an agreement of sale for [$1,377,350.00] and [Friday and Mark are asking the orphans' court to assign a value to the property] based upon fair market value [and not the agreement of sale, which is] unacceptable." *Id.* at 14.

We discern no abuse of discretion in the orphans' court's credibility determination, and subsequent consideration, of the agreement of sale. The

document was signed by all parties except Appellants and set forth an intended purchase price. Moreover, a review of the record demonstrates that Appellants initially challenged the credibility of the agreement of sale not on its veracity or authenticity but, rather, on the fact that it contained a due diligence period in which the potential buyer could, *inter alia*, conduct tests, studies, and investigations of the property and seek government approvals and permits for development prior to completing the sale. Finally, Appellants asked the orphans' court to rely on the agreement of sale, and the purchase price offered therein, when determining the value of the property after Friday and Mark asserted that the value the property should be assigned in accordance with its fair market value as determined by the master. Consequently, Appellants' third issue is without merit.

Appellants' fourth issue challenges the orphans' court's determination that the value of the property was $1,377,350.00. Appellants' Brief at 6, 53-55.

> It is well-established that courts sitting in equity hold broad powers to grant relief that will result in an equitable resolution of a dispute. In addition, [the equity] court must formulate an equitable remedy that is consistent with the relief requested[.]

***Gutteridge***, 165 A.3d at 916 (quotation marks and original brackets omitted).

Here, the orphans' court valued the property based upon the offer contained in the then-current agreement of sale, which the orphans' court found credible and required only Appellants' signatures to effectuate the sale.

- 26 -

We discern no error of law or abuse of discretion in the orphans' court's valuation determination. Therefore, Appellants' fourth issue is without merit.

Finally, Appellants assert that the orphans' court erred when it "failed to set any parameters for the sale of the property[,]" including a minimum sale price and court approval of the sale of the property. Appellants' Brief at 6, 55-57 (extraneous capitalization omitted). Appellants assert that,

> To allow [Mark] the right to dispose of the property without notice to the remaining owners [or] continued judicial oversight constitutes an abuse of discretion necessitating reversal and remand with instruction that the [orphans'] court is to retain oversight of the sale process.

*Id.* at 57 (extraneous capitalization).

Considering our decision to vacate the orphans' court order and remand this case for the reasons discussed *infra*, we find Appellants' final issue to be moot. Upon remand of this matter, the orphans' court shall enter an order that sets forth the requirements of Rule 1570, and specifically the requirements of Rule 1570(b) including the provision that the property shall first be offered for sale in a private sale confined to the parties, and if the property is not so purchased, then the property may be offered for sale in a public sale or a private sale, which is not confined to the parties. Pursuant to Rule 1567, in a private sale confined to the parties, the minimum purchase price of the property must equal the valuation assigned to the property by the orphans' court, which in the case *sub judice* is $1,377,350.00. Pa.R.Civ.P. 1567. Moreover, the sale must be confirmed by the orphans' court and will

be subject to the payment of owelty, the terms of which must be specified by the orphans' court pursuant to Rule 1570(b)(2). Pa.R.Civ.P. 1570(b)(2) (stating, "if owelty is required, [the Part II order shall include] the amount of the awards and charges which shall be necessary to preserve the respective interests of the parties, the purparts and parties for or against which the same shall be charged, the time of payment[,] and the manner of securing the payments"). If the property remains unsold after a private sale confined to the parties, then Rule 1568 provides that the orphans' court may direct the terms and conditions of a public sale or a private sale that is not confined to the parties, including setting a minimum purchase price. The orphans' court could preemptively provide the terms and conditions of a public sale or a private sale not confined to the parties in its Part II order, or the parties could seek such instruction from the orphans' court in the event such a sale is necessary.

Order vacated. Case remanded with instructions. Jurisdiction relinquished.

Judge Musmanno joins.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  11/15/2021